■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH MURPHY, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered February 16, 1978 (the date on the sentence minutes is February 16, 1979), convicting him of burglary in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress evidence. Judgment affirmed. No opinion. Hopkins, J. P., Damiani and Martuscello, JJ., concur.

Titone J., dissents and votes to reverse the judgment, grant the motion to suppress, and dismiss the indictment, with the following memorandum: An alleged accomplice of the defendant was apprehended inside a bar he was burglarizing. Bystanders advised the police that another man had acted as the "look-out", but had run away. They described him as "a male black, late 30's, five-foot 10, between 200 and 210 pounds, wearing a blue ski jacket, a rust hat and rust pants * * * his first name was Joey." The police were told also that the jacket "had slashes in it and * * * white stuffing was coming out of it." Before departing for the station house with the alleged accomplice, Officer Ranone asked the bystanders, who were unknown to him, to telephone if anyone knew the whereabouts of the alleged lookout. No attempt was made to ascertain the identity of any of the bystanders. In fact, when asked at the *Huntley* hearing whether he remembered who gave the description, the officer responded "To swear to, no; I'm not sure. There was *[sic]* a couple of people on the street." About 15 minutes after the police arrived at the station house, an anonymous caller advised Officer Ranone that "the male I was looking for, whose name was Joe, lived at 480 Clinton Avenue on the fifth floor." Four uniformed officers then went to the address and eventually knocked at defendant's door. A man clad only in his underwear answered the door, and in response to a question acknowledged that his name was Joe. On cross-examination at the *Huntley* hearing, Officer Ranone testified that he kept one hand on the door; he told the defendant that the bar around the block had been broken into and asked whether defendant would mind if he (Ranone) and the other policemen with him came inside and *"straighten it out?"* (Emphasis supplied.) According to the officer the defendant nodded, possibly said "yeah", and turned and walked away. When asked whether defendant was under arrest during the conversation outside the apartment, Ranone answered, "I guess he was, yes." Upon entering the apartment, the officer glanced into the open bedroom and observed, on the bed, a torn blue ski jacket with stuffing visible, along with rust colored pants. After defendant acknowledged that the garments belonged to him, he was formally arrested and advised of his rights. Testimony was then adduced as to spontaneous incriminating statements allegedly made by defendant while he was being taken to the precinct. At the trial Ranone testified that while defendant was not "staggering drunk" at the time, he had "smelled an odor of alcohol on his breath." Another witness at the trial categorized defendant at that time as

being "high" but not "staggering" drunk. In view of the above facts, I conclude that in the absence of the demonstrated reliability of the person who made the anonymous call to Ranone and supplied him with information as to defendant's residence, the arrest of defendant prior to entry by the police into his dwelling was without probable cause and thus illegal. It is a basic principle of Fourth Amendment law that searches and seizures carried out on a suspect's premises without a warrant are per se unreasonable unless the police can show that they fall within one of certain carefully designated exceptions based on the presence of "exigent circumstances." (See *Payton v New York,* 445 US 573, 583; *Coolidge v New Hampshire,* 403 US 443, 477-478.) To establish probable cause for issuance of a search warrant, or for a warrantless arrest and search conducted in exigent circumstances, it must be shown that the informer is credible or reliable, and also that he had a sufficient basis for concluding that the subject of the tip is engaged in illegal activities *(People v West,* 44 NY2d 656, 657; cf. *People v Horowitz,* 21 NY2d 55). I am also of the opinion that the "consent" to enter obtained from defendant by the police officers constituted at most a mere submission or acquiescence to lawful authority. Although defendant at the time may not have been "staggering drunk", as Officer Ranone stated, it seems evident that he was under the influence of liquor to some degree. Opening the door, defendant was confronted by four uniformed police officers, one of whom kept his hand on the open door. Since at least one of the officers "guessed" or considered defendant to be under arrest at that point, it would be reasonable to assume that defendant was of the same view. Moreover, he was addressed at the outset in language which implied police awareness or belief of his involvement in the burglary committed at the bar, to wit, would defendant mind if "we [the police] come in and *straighten it out?"* (Emphasis supplied.) Finally, it is not clear from Ranone's testimony at the *Huntley* hearing that defendant verbally acquiesced to the police request to enter. His nodding and walking away immediately after the request connotes resignation to the inevitability of being taken into custody by the four uniformed officers who were standing before him when he opened the door. Accordingly, since no probable cause existed for the arrest of defendant without a warrant and there was insufficient evidence adduced at the *Huntley* hearing to show that defendant voluntarily consented to the entry by the police into his apartment, the ensuing seizure of his clothing was illegal. Therefore, the evidence should be suppressed and the indictment dismissed.